SAVAGE et al. v. NIXON et al.

(District Court, N. D. California, Second Division.   October 9, 1913.)

No. 14,900.

MINES AND MINERALS (§ 55*)—CONTRACT FOR SALE OF MINING PROPERTY—
CONSTRUCTION AND OPERATION.

Under a contract for the sale of mining property, which authorized the purchasers to extract and remove ore therefrom, ore extracted by them, but rejected as tailings and thrown on the dump, where it remained until after the contract was canceled and a new contract for the sale of the same and other property substituted therefor, *held* to have become, on such cancellation, a part of the mine property, and its subsequent removal and sale by the purchasers to have been subject to the terms of the second contract.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. § 55.*]

At Law.   Action by M. Savage and W. H. Warden against George S. Nixon and George Wingfield, copartners as Nixon & Wingfield. Judgment for plaintiffs.

Ben P. Tabor, of Auburn, Cal., and Vecki & Wythe, of San Francisco, Cal., for plaintiffs.

Hoyt & Gibbons, of Reno, Nev., for defendants.

DOOLING, District Judge.   Plaintiffs by a contract executed February 19, 1907, agreed to sell to defendants a five-sixths interest in certain mining property situated in Placer county for $100,000, of which sum $50,000 was paid at the date of the contract, the remaining $50,000 to be paid on or before the expiration of 90 days.   The contract further provided:

"That the parties of the second part [defendants] shall be and they are hereby let into immediate possession of said mining properties, with full power and license to prospect upon, work, develop, and extract and remove ore from said mining properties, and mill the same, at such places and in such manner as they may see fit."

Under this contract defendants went into possession of said properties and extracted certain ore therefrom, which was of the value of about $30,000.   This ore body was discovered near the expiration of the 90 days, but all of the ore was removed before said time had expired. Certain other ore, however, was extracted during this period, but was not removed from the properties, having been placed, as one of the defendant's witnesses expressed it, "in the dump"; his language being, "there was rejected tailings in the dump."   The contract expired on May 20, 1907, and on that day another contract was entered into between the same parties, by which the plaintiffs agreed to sell to defendants a five-sixths interest in the same properties, with other additional properties, for the sum of $50,000, to be paid on or before the expiration of 180 days; the contract further providing:

"That the parties of the second part shall be, and they are hereby, let into the immediate possession of said mining properties, and are hereby given full

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

power and license to prospect upon, work, develop, and extract and remove ore from said mining property, and mill the same; provided, that the proceeds derived from all ore extracted from said properties shall be, so fast as returned therefrom or received, deposited in the Placer County Bank to the credit of the parties of the first part, until the same shall amount to $50,000, the same to be treated as and to be considered to be payments upon the purchase price."

This contract further provided:

"It is understood and agreed that all prior contracts and agreements made between the parties hereunto are hereby abrogated and set at naught."

Under this second contract the defendants remained in possession of the said properties embraced in the first contract until some time in October, when they abandoned the properties without having paid any portion of the $50,000 or deposited any sums to the credit of the plaintiffs. During this latter period, however, they worked over and sacked up certain of the ore heretofore mentioned as having been extracted during the life of the first contract and placed on the dump, and in the latter part of September they removed the same from the property and sent it to the smelter. The value of this ore was $2,434.20. Of this sum one-sixth, or $405.70, was paid to plaintiffs, and this action is for the conversion of the remainder.

Defendants' contention is that, as the ore was extracted during the life of the first contract, it became their property thereunder, even though left on the dump until after said contract expired, and that, even if this were not so, the peculiar provisions of the second contract, which permitted them "to extract and *remove*" ore, and required them to deposit only the proceeds of the ore "*extracted*," would warrant them in "removing" for their own sole benefit ore previously "extracted."

The plaintiffs contend that whatever rights defendants had under the first contract expired therewith, particularly in view of the provision of the second contract that all "previous agreements should be abrogated and set at naught," and that all of this ore, being then on the dump, was a part of the mine and belonged to them, and that if defendants removed it therefrom they were bound under the terms of the second contract to deposit the proceeds to their credit.

The rights of the defendants must be determined by the provisions of the first contract, as the second contract adds nothing to them in so far as the ore in question is concerned. They might have segregated and removed this ore during the life of the first contract, but they did not do so. It was thrown on the dump with the refuse of the mine, and their superintendent, then in charge, speaks of it as "rejected tailings." It had to be picked out from the other rock and earth with which it was mingled on the dump, and this was not done, so far as the evidence discloses, until three or four months after the expiration of the contract under which it was extracted. I am of the opinion that defendants placed this ore on the dump, having rejected it, with no intention of thereafter claiming it, and that, had it not been for their going into possession of the mining property under the second contract, they would never have

thought of removing it, but that when, under said contract, they made no new discovery of ore in the mine proper, they began to work over the dump.

All the circumstances lead me to the conclusion that the dump, including this ore, became part of the mine at the expiration of the first contract, and that, under the second contract, the proceeds of this ore should have been deposited to the credit of the plaintiffs.

Judgment will therefore be entered for plaintiffs for the sum of $2,028.50, and costs.