**SALAKY**

v.

**ATLAS TANK PROCESSING CORP. et al.**

**THE ATLAS BARGE NO. 3.**

**THE CATHERINE O'BOYLE.**

**No. 18800.**

United States District Court
E. D. New York.
April 14, 1953.

Krisel, Beck & Taylor, New York City, Max Taylor, New York City, for libelant.

Isidore Paley, New York City, George A. Berkowitz, New York City, for Atlas Tank Processing Corp.

Macklin, Speer, Hanan & McKernan, New York City, Gerald J. McKernan, New York City, for Jerome E. and Loretta O'Boyle.

ABRUZZO, District Judge.

Libelant is the assignee of claims of 44 owners of various small craft, including motor boats, sail boats, and row boats, under an assignment executed in the State of New Jersey. He instituted this action to recover damages to these various craft caused by oil sludge and foreign matter allegedly discharged from the barges Catherine O'Boyle and Atlas Barge No. 3 into the waters of Arthur Kill and Raritan Bay in the vicinity of Perth Amboy, New Jersey, on April 24, 1946. These small craft were at that time moored in and about the Yacht Basin at Perth Amboy.

The facts indicate that the O'Boyle barge was docked about one and one-half miles north of the Yacht Basin on the Staten Island side of the Arthur Kill and that the Atlas No. 3 was one-half mile beyond this, tied to a dock on the New Jersey side. The Atlas for several days prior to April 24th had been engaged in cleaning the tanks of three vessels, and on the particular day in question was pumping out the bilges of the S. S. Lahaina Victory. Huley, Inspector of Customs at Perth Amboy, testified that he was at the Yacht Basin between 12 and 2 o'clock on the 24th and saw nothing unusual there at that time. He boarded his picket boat and proceeded to the O'Boyle barge where he noticed that it had a hose leading overboard from its bilge pump. He then proceeded to the dock from which the Atlas was pumping out the bilges of the S. S. Lahaina Victory. The Atlas barge was extremely overloaded, and the bilge which consisted of "oil, salt water and all kinds of mixings" was being "spirited" into the water. He traced an oil slick of about a mile or more south of the dock but between 4 and 5 o'clock in the afternoon when he returned to the Yacht Basin he saw nothing unusual there at that time.

The boatswain's mate on the picket boat accused the O'Boyle captain of pumping oil into the water. He noticed that the pump was hot, the suction line was leading down into the bilge, the discharge line was over the side, and there was oil all around the barge. He also noticed that there was oil in the Yacht Basin at 8 in the morning on the 24th and still there at 5 p. m. of that day.

Two small craft owners testified. Smith who owned a launch service gave testimony that on the morning of the 24th he saw a mixture of oil, bilge, and dirt in the water. His boat was in good condition prior to that morning but subsequently had to be cleaned because of the oil, bilge, and dirt.

Wolfe who resided one block south of the Yacht Basin was the owner of 25 row boats, several outboard boats, a couple of inboard boats, and a small yacht, all of which had been newly painted. He had been on the water all that day. He saw no oil in his boat basin on the morning of the 24th, but about 3:30 p. m. oil began to come into his basin on the ebbtide.

■ Chambers, called as a witness, testified that he was a watchman aboard the motor vessel Sea Otter which was berthed at the O'Boyle dock and was tied up to the O'Boyle barge. During the night of April 23d and 24th a British tanker had been discharging oil directly opposite to them. When he arose on the morning of the 24th, the waters around the O'Boyle dock were full of bunker "C" oil. In his testimony he denied that the O'Boyle barge was discharging oil, as did the captain of the O'Boyle. The testimony is somewhat contradictory but a summary leads to the conclusion that there was oil in the Yacht Basin on the morning of April 24th, and that this oil caused damage to the small craft moored therein. The proof indicates clearly that the oil in the Basin which caused the damage was clearly traceable partly to the O'Boyle, and I so find.

The Atlas had nine tank cleaners working on the S. S. Lahaina Victory, and three men working in the engine room. None of these witnesses was called. Beginning on the morning of April 22d, the Atlas cleaned three vessels. They were first washed down with diesel fuel with a water hose and then with water. This created a sludge, and when the tanks of the Atlas No. 3 became full it spilled into the water. The Atlas No. 3 was overloaded and was overflowing as late as 2 p. m. on the 24th.

The oil of the Atlas and of the O'Boyle undoubtedly converged together and spilled into the Basin and, therefore, the Atlas No. 3 is also responsible for the damage to these small craft, and I so find.

■ Both respondents contend that the assignment is void under the laws of the State of New Jersey in that the assignment of a chose in action arising from the tortious injury to personal property was not assignable in that State. While this is true, see East Orange Lumber Co. v. Feiganspan, 120 N.J.L. 410, 199 A. 778, it is not the law in the case at bar which is laid in admiralty.

This action sounds in admiralty and as was said in Ozanic v. United States, 2 Cir., 188 F.2d 228, at page 231:

"In the admiralty the assignee of a chose of action is recognized as the obligee and may sue in his own name, * * *."

In a footnote to Ozanic v. United States, supra, the court cites The Mandu, 2 Cir., 102 F.2d 459. There it was held, 102 F.2d at pages 461–462:

"In non-maritime causes a person who takes legal title to a claim by outright assignment is deemed the real party in interest and is entitled to maintain suit in his own name, and it makes no difference that he is merely collecting for the account of the assignor. Sheridan v. Mayor [etc., of City of New York], 68 N.Y. 30; Anderson v. Reardon, 46 Minn. 185, 48 N.W. 777; King v. Miller, 53 Or. 53, 97 P. 542; Chase v. Dodge, 111 Wis. 70, 86 N.W. 548. The practice in admiralty is the same * * *."

Submit findings of fact, conclusions of law, and a decree in favor of libelant and against both respondents.

### Supplemental Opinion

■ Libelant may recover for damages to the row boats involved in this

suit. Section 740 of Title 46, U.S.C.A., which was enacted subsequent to Perry v. Haines, 191 U.S. 17, 24 S.Ct. 8, 48 L.Ed. 73, extends the admiralty jurisdiction "to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, \* \* \*" and as I read the statute it includes row boats and all articles of personal property.