**STEAMTUG ALADDIN, INC.**

v.

**The CITY OF BOSTON, The Mystic River Bridge Authority, The United States of America.**

**No. 57-17.**

United States District Court

D. Massachusetts.

June 23, 1958.

500

Krisel, Beck & Taylor, New York City, James A. Cronin, Jr., Malden, Mass., for plaintiff.

Anthony Julian, U. S. Atty., George C. Caner, Jr., Asst. U. S. Atty., for defendant.

William D. Quigley, Boston, Mass., for City of Boston.

John Kewer and John Hogan, Boston, Mass., for Mystic River Bridge Authority.

WYZANSKI, District Judge.

Libellant filed a libel against the United States and others. Thereafter the United States filed exceptions and moved to dismiss the suit against it on the ground that "the libel does not state facts sufficient to constitute a cause of action" against it, and that if any claim was stated it could not be maintained in admiralty.

The libel alleges that the libellant owns the Steamtug Aladdin, that on June 11, 1955, "timber proceeding from the main part of the abutment" of the Chelsea Swing bridge struck the tug while it "was proceeding in the Mystic River", that prior to that date the Chelsea Swing bridge was "abandoned" by the City of Boston to the United States which was "in control of the said bridge and under a duty to properly maintain the bridge" and which "was under a duty to properly light the said swing bridge and equip it with proper aids to navigation," and that the collision was caused by the failure of the United States and others to display proper lights on the abutment, to maintain it properly, and to remove loose planks protruding from the abutment.

Despite these allegations, it does not appear that there is any statutory duty resting upon the United States, or any agency or officer thereof,

to maintain the Chelsea Swing bridge, to light it, or to guard against loose planks protruding therefrom. The statutory provisions cited in libellant's brief are manifestly irrelevant. 33 U.S.C.A. § 512 imposes no duty upon the United States when it is in control of a bridge. 33 U.S.C.A. §§ 409 and 414 refer to wrecks such as sunken vessels, but have no application to obstructions protruding from a bridge. 14 U.S.C. §§ 84 and 86 are likewise so narrowly stated as not to reach obstructions protruding from bridges, but, on the contrary, are concerned with aids to navigation and abandoned vessels, respectively. The requirements laid down in 14 U.S.C. § 85 and 33 C.F.R. 68, 15–55(c) do not purport to bind the United States. Hence the libel against the United States cannot validly be premised upon the cited statutes.

■ However, both at common law and in admiralty there is a duty imposed upon *persons in control* of a bridge to exercise care that loose planks shall not protrude from a bridge in such a way as to be a menace to navigation.

■ Today at common law there is a duty upon the possessor of land not to cause injury to another's property by an abatable physical condition on the land which the possessor has failed to take reasonable steps to abate, provided the condition was a state of disrepair existing when he took possession, or was a condition which came into existence while he was in possession, and he had reason to know or should have known of the risk involved. Restatement, Torts, § 839; Prosser, Law of Torts, 2nd ed. 1955, ch. 15, par. 75; City of Holyoke v. Hadley Water-Power Co., 174 Mass. 424, 426–427, 54 N.E. 889; Magay v. Claflin-Sumner Coal Co., 257 Mass. 244, 246–247, 153 N.E. 534, 53 A.L.R. 928. See Dix W. Noel, Nuisances From Land, 56 Harv.L.Rev. 772, 796, note 104.

And, by parallel reasoning, no doubt, the admiralty law would recognize that a party in possession of a bridge owed to passing vessels a duty to take reasonable steps to abate a condition of disrepair of the bridge existing when the party took possession or which came into existence after it took possession, provided the party should have known of the risk involved to passing vessels.

■■ Yet absent a statute, this duty, while it rests on others, could not be imposed upon the United States,—it, as a sovereign, being immune both from any obligation in tort, and from any remedy sought against it either in admiralty or at common law. Thus the question is whether such a statute exists. No statute has imposed upon the United States any obligation *in admiralty*, or any remedy pursuable in the admiralty jurisdiction. However, tort obligations *at law*, parallel to those resting upon private persons, have been not only imposed upon the United States but also made enforceable in civil actions by injured parties against the United States. This is the obvious purport of the Federal Tort Claims Act. Hence the allegations in the libel that the United States was in control of the bridge and allowed loose timbers to protrude therefrom causing injury to the claimant are adequate to sustain a civil action, but not an admiralty suit.

But the United States urges that having been sued on the wrong side of the docket it is entitled to have the suit against it dismissed. This contention is unsound. The error was technical. No one has been prejudiced by the mistake. And indeed if the claimant had followed the proper course and had sued the United States in a civil action, and had sued the other respondents in an admiralty suit, then this Court upon *being informed that the same basic facts* underlay both the civil action and the libel, would undoubtedly have set down both matters for a joint trial simultaneously before the same judge. Cornell Steamboat Co. v. United States, D.C.S.D. N.Y., 138 F.Supp. 16. There is no reason not to allow libellant to amend its complaint now so as to accomplish the same result.

Libellant is given until August 1 to file in this Court an amendment making

explicit the point that its claim against the United States is founded on the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680. If the amendment is seasonably filed that claim will be heard during the first week of December at the same time that this suit in admiralty is heard against the other respondents. To follow an opposite course and to dismiss forthwith the libel against the United States and to force libellant to begin over would give the government the unmerited opportunity to plead the period of limitations applicable to civil actions against the United States for torts, a period which had not elapsed when the libel was filed, but which has now expired.

Motion to dismiss denied.