**UNITED CONTINENTAL TUNA CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**John A. KROH, Sr., et al., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**Nos. 72–1189, 73–2417.**

United States Court of Appeals,
Ninth Circuit.

June 24, 1974.

Rehearing Denied Aug. 21, 1974.

Francis J. MacLaughlin (argued), Lillick, McHose, Wheat, Adams & Charles, Los Angeles, Cal., for plaintiffs-appellants.

Paul Gary Sterling (argued), Admiralty & Shipping Section, U. S. Dept. of Justice, San Francisco, Cal., for defendant-appellee.

Before KOELSCH, HUFSTEDLER and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This case requires us to consider the interrelationship of the 1960 amendments to the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, as amended, September 13, 1960, Pub.L. 86–770, § 3, 74 Stat. 912; the Public Vessels Act, 46 U.S.C. §§ 781–790, and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. It arises in the context of two suits brought by the owners of a fishing vessel who allege that the boat's sinking was caused by the U.S.S. Parsons, a naval destroyer and public vessel of the United States.

In late 1969, United Continental Tuna Corporation (Tuna Corporation) with funds furnished by American investors purchased a fishing vessel, the M.V. Orient, and refitted it at considerable expense. Tuna Corporation was organized as a Philippine corporation to enable the boat to operate in the Republic of the Philippines. On its first voyage it was overhauled and hailed 70 miles outbound from San Pedro by the U.S.S. Parsons; a collision followed which resulted in the sinking of the Orient with total loss. The corporation filed an action in District Court against the United States to recover its loss under both the Suits in Admiralty Act (SIA) and the Public Vessels Act (PVA). The District Court

granted the United States' motion for summary judgment and this appeal followed. During the pendency of that action the corporation was dissolved and its rights to recover for the loss of its sole asset were distributed to its shareholders. The shareholders commenced an alternative or back-up action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (FTCA) alleging in substance that if they had no remedy for their cause of action under either SIA or PVA they had a remedy under FTCA. The two appeals were consolidated for argument and will be considered together here.

The basis upon which the motion for summary judgment was granted in the first action was that the appellant was a "foreign national" and therefore subject to section 5, the reciprocity provision of the PVA, 46 U.S.C. § 785.[1] That is, because the appellant was incorporated under the laws of the Republic of the Philippines, the court ruled that the appellant had to demonstrate that the Philippine government would consent to be sued if an action were brought against it by a United States citizen under like circumstances. Relatedly, the court concluded that the individual shareholders of Tuna Corporation had no greater rights derivatively than the corporation had originally. Since the appellant failed to demonstrate reciprocity, the court dismissed the suit on jurisdictional grounds. In so doing, the court implicitly rejected the argument that the appellant could maintain its action under the SIA *alone*, without reference to the

PVA, and thereby avoid the application of the reciprocity requirement.

Prior to 1920, the United States claimed complete sovereign immunity from all claims arising out of collisions with its vessels. The first inroad upon this absolute immunity came in 1920 with the enactment of the Suits in Admiralty Act, 46 U.S.C. §§ 741–752. Section 742 of the SIA provided:

"In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States . . . *provided that such vessel is employed as a merchant vessel* . . . ." (Emphasis added.)

Thus, the government waived its immunity from liability for damages, but only in instances where United States "merchant" vessels or cargo were involved.

The second expansion occurred in 1925 with the passage of the Public Vessels Act, 46 U.S.C. §§ 781–790. This Act further waived sovereign immunity by permitting actions against the United States involving public vessels. It was in the PVA, however, that the reciprocity limitation previously discussed[2] was introduced. No such requirement was contained in the earlier SIA. There were other differences between the two admiralty statutes as originally enacted, including dissimilar venue provisions[3]

---

1. "785. Suits by nationals of foreign governments

"No suit may be brought under sections 781–790 of this title by a national of any foreign government unless it shall appear to the satisfaction of the court in which suit is brought that said government, under similar circumstances, allows nationals of the United States to sue. in its courts."

2. See note 1 *supra*.

3. Under the SIA, venue lies only in the district court for the district in which the plaintiff resides or has his principal place of business, or in which the vessel or cargo charged with liability can be found. 46 U.S. C. § 742. The PVA, however, authorizes suit in any district court of the United States if the plaintiff neither resides nor has a principal place of business in the United States and the United States vessel is outside United States territorial waters. 46 U. S.C. § 782.

and prejudgment interest allowances.[4] However, over the years, the courts have consistently construed the two maritime statutes together as constituting a complementary plan for the recovery of damages caused by government-owned vessels. Thus in Calmar SS Corp. v. United States, 345 U.S. 446, 451, 73 S. Ct. 733, 736, 97 L.Ed. 1140 (1953), the Supreme Court interpreted the two acts as "manifestations of a single larger purpose, jointly forming a rational system free of random omissions and exceptions." *See also* Aliotti v. United States, 221 F.2d 598, 602 (9th Cir. 1955); Mejia v. United States, 152 F.2d 686, 687 (5th Cir. 1945).

In 1960, however, this statutory scheme was disrupted by the adoption of an amendment to section 742 of the Suits in Admiralty Act. The amendment deleted the jurisdictional language in the first sentence of section 742 which had limited that Act to suits involving United States *merchant* vessels. In its place, a broad, new jurisdictional statement was substituted:

> "In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . . ."

No mention of the PVA reciprocity provision appears in either amended section 742 or its legislative history. Indeed, the legislative history rather reveals that this amendment emerged as a hasty afterthought in a remedial effort that was primarily directed at eliminating the jurisdictional confusion between

the admiralty statutes and the Tucker Act.[5] There is only the unelaborated observation that: "A substantial portion of the jurisdictional uncertainty in this area is attributable to confusion in establishing whether a vessel is a 'merchant vessel' or a 'public vessel.'" S. Rep.No.1894, 86 Cong., 2d Sess., 1960 U.S.Code Cong. & Admin.News 3583, 3586.

Notwithstanding the many ambiguities inherent in this legislative action, the majority of courts considering the 1960 amendments have interpreted the SIA as presently encompassing all maritime claims against the United States, regardless of the type of vessel involved. *See, e. g.,* Ira S. Bushey & Sons, Inc. v. United States, 398 F.2d 167, 169 (2d Cir. 1968); T. J. Falgout Boats, Inc. v. United States, 361 F.Supp. 838, 841, 842 (C.D.Cal.1972); Richmond Marine Panama, S.A. v. United States, 350 F.Supp. 1210, 1219–1221 (S.D.N.Y.1972); *but see* J. W. Petersen Coal & Oil Co. v. United States, 323 F.Supp. 1198 (N.D. Ill.1970). Relatedly, in Amell v. United States, 384 U.S. 158, 164, 86 S.Ct. 1384, 1388, 16 L.Ed.2d 445 (1966), the Supreme Court observed:

> "In 1960, Congress addressed itself to the jurisdictional overlap between the Tucker Act and the Suits in Admiralty Act . . . . Simultaneously, Congress abolished the distinction between public and merchant vessels, a matter which had sorely confused attorneys and had caused misfilings in the past . . . ."

■■ Since the favored literal reading of amended section 742 would certainly support maintenance of the appellant's suit under the SIA, we believe that the District Court erred when it

---

4. *See* Richmond Marine Panama, S.A. v. United States, 350 F.Supp. 1210, 1219–1221 (S.D.N.Y.1972).

5. Both the SIA and the PVA contain a 2-year statute of limitations, while the Tucker Act (authorizing suit in the Court of Claims) has a 6-year limitations period. A mistake in selecting the correct statute and court frequently resulted in the loss of all relief. It was this fact which primarily motivated the legislative action which resulted in the 1960 amendments.

dismissed the action as predicated upon that Act. Moreover, since section 785 of the PVA explicitly restricts the operation of the reciprocity requirement to that act alone, we see no reason to import the restriction to the SIA. *Cf.* De Bardeleben Marine Corp. v. United States, 451 F.2d 140, 145–146 (5th Cir. 1971). We acknowledge the government's concern that such a conclusion permits the PVA reciprocity provision to be circumvented in a manner neither explicitly authorized nor perhaps contemplated by Congress. However, we note that the more stringent venue requirements of the SIA[6] may prohibit some foreign nationals from proceeding under the Act, and thus leave the PVA and its reciprocity clause some continuing efficacy.

Finally, we note that our conclusion here is consonant with the modern view which liberally construes waivers of governmental immunity. As Judge Brown observed in Gulf Oil Corp. v. Panama Canal Co., 407 F.2d 24, 28 (5th Cir. 1969):

> "In the structure of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., the Public Vessels Act, 46 U.S.C.A. § 781 et seq., and the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) which expose the government in all of its sovereign glory to almost unlimited liabilities comparable to private parties, the approach is to construe the waiver sensibly, naturally, which means most of the time, literally."

Since we conclude that the appellant's action is maintainable under the SIA, the necessary corollary is that this action is not cognizable under the FTCA. 28 U.S.C.A. § 2680(d).

We therefore reverse and remand the first action (Appeal No. 72–1189) for a trial on the merits, and affirm the dismissal of the appellant's second action (Appeal No. 73–2417).