James E. McCORMICK and Carol Ann McCormick, etc., et al., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 79–2144.

United States Court of Appeals, Fifth Circuit.

May 18, 1981.

Clayton J. M. Adkinson, DeFuniak Springs, Fla., for plaintiffs-appellants.

Nicholas P. Geeker, U. S. Atty., Pensacola, Fla., Stephen Leach, Trial Atty., Torts Branch, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

This appeal presents a conflict in the applicability of two statutes providing for a waiver of the Federal Government's sovereign immunity under differing terms, the differences of which control the outcome of the case. The statutes differ in pertinent part in their respective limitations and administrative exhaustion provisions. The appellants brought their suit below under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. The Government won dismissal on the ground that suit had to be maintained, if at all, under the Suits in Admiralty Act (the "SAA"), 46 U.S.C. §§ 741–752.[1] We conclude that suit

1. The principal parts of the SAA are the following:

§ 741. Exemption of United States vessels and cargoes from arrest or seizure

No vessel owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock or in the possession of the United States or of such corporation or operated by or for the United States or such corporation, and no cargo owned or possessed by the United States or by such corporation, shall, in view of the provision herein made for a libel in personam, be sub-

was proper under the FTCA, and we reverse.

The problem in this case is one of limitations. The plaintiffs have brought a maritime tort action against the United States. Apparently unaware of the possible applicability of the SAA to their cause of action, plaintiffs carefully complied with the provisions of the FTCA in asserting their claim and in waiting for the right time to bring suit. If, however, as the Government convinced the lower court, the FTCA does not apply but instead the suit is governed by the SAA, then they waited too long to sue. Determining which Act applies raises complicated questions concerning the evolution of the SAA from its inception in 1920 through its amendment in 1960. Before 1960, a case such as this was proper under the FTCA. The ultimate question is whether Congress intended, by the 1960 amendments to the SAA, to bring all maritime torts against the United States within the scope of that Act. Our examination of the history of the SAA, both as originally enacted and as it was amended in 1960, indicates quite clearly that Congress had no such intent. Most courts that have considered the issue, however, including this court in a prior decision, have reached a contrary conclusion. We believe that recent intervening Supreme Court authority calls for a reexamination of our former position. We conclude that while the 1960 amendments to the SAA were intended to plug existing loopholes in the scope of the district court's jurisdiction in admiralty, under the SAA, they were not intended to modify the scope of the district court's existing jurisdiction over maritime torts at law, under the FTCA.[2]

### I. Background

The facts, so far as relevant to the issues presented, are undisputed. The complaint was filed on November 6, 1978. It alleges. that at 4:30 a.m. on the morning of August 22, 1976, James E. McCormick and a friend were crossing the waters of the Choctawhatchee Bay near Fort Rucker, Florida, "when they collided with an object which was unlawfully placed and improperly constructed by the United States Army so as to impede and create a hazard for those navigating the waters of the Choctawhatchee Bay." Appellants submitted their claims for damages to the Department of the Army on January 25, 1978, and on July 21, 1978.[3] On September 22, 1978, the Department denied their claims on the ground that administrative authority to settle the claims had expired on the second anniversary of

---

ject to arrest or seizure by judicial process in the United States or its possessions . . . .
§ 742. Libel in personam
*In cases where* if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or *if a private person or property were involved*, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . . . [Emphasis added.]
Before 1960, § 742 read as follows:
In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States . . . provided that such vessel is employed as a merchant vessel . . . ."
41 Stat. 525, 46 U.S.C. § 742 (1965 ed.).

2. Our resolution was not anticipated by the parties, whose arguments have centered on the scope of exceptions, if any, to the operation of the SAA's statute of limitations, assuming the applicability of that Act. (Additionally, plaintiffs have argued that, under the facts of this case, an admiralty remedy is beyond the federal judicial power under article III of the Constitution, a contention we need not reach.) The issue is purely one of law, however, and was subsumed in the district court's conclusion that the SAA, not the FTCA, governed this suit, and that there are no applicable exceptions to the operation of the SAA's limitations provisions. Our decision therefore does not offend the appellate practice of not deciding issues that were not considered by the district court. *Cf. Higginbotham v. Ford Motor Co.*, 540 F.2d 762, 768, n.10 (5th Cir. 1976) (reaching exceptions to rule in deciding distinct issue raised for first time on appeal).

3. *Id.*, 6–13. Appellant McCormick filed his claim in January. He amended his claim in July, at which time his wife, Carol McCormick, submitted her claim. Claims in behalf of the McCormicks' three minor children were also submitted in July.

the accident, which fell on August 22, 1978, the date that the Government now contends was the last day for filing suit. As noted, the complaint was filed on November 6, 1978.

If this case is properly maintained under the FTCA, then plaintiffs did everything they were supposed to do. The FTCA requires the submission of a claim prior to bringing suit.[4] And while the statute of limitations for FTCA actions requires that claims be submitted within two years of their accrual, suit thereon may, under some circumstances, be brought up to a year later.[5] There is no question of the timeliness of this complaint under the FTCA. Plaintiffs filed their claims within two years of their accrual, the Government denied those claims within six months, and within six months thereafter suit was filed.

A suit under the SAA, on the other hand, entails none of these complexities, although, as will be seen, that Act has hidden complexities of its own. There is no requirement that claims first be submitted to the appropriate agency.[6] More significant for this case is the statute of limitations for actions under the SAA: "Suits as authorized by this [Act] may be brought only within two years after the cause of action arises . . . ." 46 U.S.C. § 745. The SAA makes no express provision for the tolling of the statute during the pendency of any ongoing settlement negotiations or administrative review.[7]

4. Proceedings under the FTCA are "[s]ubject to the provisions of chapter 171" of Title 28, U.S.C. §§ 2671–2680. 28 U.S.C. § 1346(b). That chapter provides a comprehensive scheme for the submission of claims for damages to the appropriate administrative agency for settlement negotiations short of, and as a precondition to, resort to the courts. No action based on the negligent or wrongful act or omission of a Government employee can be brought unless a claim for damages has been presented to the appropriate federal agency. 28 U.S.C. § 2675(a). Suit cannot be filed until after the agency has finally denied the claim, or until, after the claim has been pending before the agency for at least six months, the claimant elects to treat the failure to settle as a denial of the claim. *Id.* This court has held that the administrative claims provisions of § 2675 are jurisdictional and cannot be waived. *See, e.g., Employees Welfare Committee v. Daws,* 599 F.2d 1375 (5th. Cir. 1979).

5. The applicable statute of limitations for FTCA actions, 28 U.S.C. § 2401 incorporates the provisions for administrative review. Sec. 2401 distinguishes between "civil actions" and "tort claims." Every civil action against the United States must commence within six years of the accrual of the cause of action. *Id.,* § 2401(a). A tort claim, however, is "forever barred unless it is presented in writing . . . within two years after such claim accrues or unless action is begun within six months after . . . notice of final denial of the claim by the agency to which it was presented." *Id.,* § 2401(b). The distinction between the time for filing a "claim" and the time for bringing an "action" is thus highly significant. A tort claimant has up to two years to file a claim, and up to six months after the denial of the claim to bring suit. Under the right set of circumstances, therefore, reading § 2675, *supra*

note 4, together with § 2401, an FTCA plaintiff may have up to three years to bring suit on a claim: two years to initiate administrative review of the claim, six months for agency review (if the agency takes that long), and six months thereafter to bring suit. *But compare* § 2675 *with* § 2401, *and see Mack v. United States,* 414 F.Supp. 504 (E.D.Mich.1976) (running of six month period for filing suit tolled during three year period that timely administrative claim was pending before agency).

6. The appellants seek a way out of the trap into which they have stumbled in their reliance on the FTCA by arguing that the Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 740, avails them, but we deem that Act inapplicable here. That Act, in a hybrid of FTCA and SAA procedure, does require the submission of a claim, but it expressly preempts the operation of the FTCA under circumstances where, as the later discussion in the text hopefully will make clear, suit would be proper only under the SAA. Sec. 740 requires a six month waiting period after a claim is filed, and particularly refers to "the *vessel* causing the injury or damage." (Emphasis added.)

7. In view of our disposition of this case we need not address appellants' argument that, in the event that claimants proceeded under the erroneous assumption that they are bound by the procedures of the FTCA when in fact suit can only be maintained under the SAA, the running of the latter Act's two year statute of limitations ought to be tolled for as long as a claim is pending before the agency (as contemplated by 28 U.S.C. §§ 2401, 2675) or for such shorter period of time as under the circumstances would seem just. We note, however, that such an argument would be most compelling if plaintiffs could show that they were

The issue we must decide, therefore, is which Act applies? That both remedies are not available is made clear by the FTCA itself, which provides that "[t]he provisions of this [Act] shall not apply to . . . [a]ny claim for which a remedy is provided by sections 741–752 . . . of Title 46, [the SAA,] relating to claims or suits in admiralty against the United States." 28 U.S.C. § 2680(d). We therefore turn to the history of the SAA in an effort to gauge its scope.

## II. The SAA—As Enacted

Prior to 1916, the doctrine of sovereign immunity barred any suit by a private owner whose vessel was damaged by a vessel owned or operated by the United States. Recognizing the inequities of denying recovery to private owners and the difficulties inherent in attempting to grant relief to deserving private owners through private Acts of Congress, Congress provided in the Shipping Act, 1916, that Shipping Board vessels employed as merchant vessels were subject to "all laws, regulations, and liabilities governing merchant vessels." 39 Stat. 730, 46 U.S.C. § 808. In *The Lake Monroe*, 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962 (1919), [the Supreme] Court held that the Shipping Act had subjected all Shipping Board merchant vessels to proceedings *in rem* in admiralty, including arrest and seizure. Congress, concerned that the arrest and seizure of Shipping Board merchant vessels would occasion unnecessary delay and expense, promptly responded to the *Lake Monroe* decision by enacting the Suits in Admiralty Act. The Act prohibited the arrest or seizure of any vessel owned by, possessed by, or operated by or for the United States. 46 U.S.C. § 741. In the place of an *in rem* proceeding, the Act authorized a libel *in personam* in cases involving such vessels, if such a proceeding could have been maintained had the vessel been a private vessel, and "provided that such vessel is employed as a merchant vessel." 41 Stat. 525, 46 U.S.C. 742 (1958 ed.).

*United States v. United Continental Tuna Corp.*, 425 U.S. 164, 170–71, 96 S.Ct. 1319, 1323–24, 47 L.Ed.2d 653 (1976) (footnote omitted). In short, Congress sought through the SAA to effect a waiver of sovereign immunity for claims against Government vessels or cargo. But the scope of the waiver was confined to the problem generated by the *Lake Monroe* decision, namely, the arrest of Government

encouraged in their reliance upon the wrong Act by their dealings with the Government. In this case the denial of the claims by the Department of the Army made clear that plaintiffs were advised of the limitations period respecting the Department's authority to negotiate the claims. R., 14–15. There is no indication in the record, however, that the plaintiffs were ever advised that their reliance upon the FTCA and its limitations period was misplaced and that suit had to be filed within two years of the accident. All claims were finally submitted on July 21, 1978, and § 2675, if applicable, precluded suit any time before the Department's denial on September 22, a month for good measure after the second anniversary of the accident. We are aware that the limitations period of § 745 has been held to be jurisdictional, not subject to waiver, and more or less toll-proof, *e.g. Roberts v. United States*, 498 F.2d 520 (9th Cir. 1974), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974), and *Isthmian Steamship Co. v. United States*, 302 F.2d 69 (2d Cir. 1962). Whether the two year limitations period in § 745 is subject to equitable principles of construction appears to be an open question in this circuit.

The Supreme Court raised the question whether an administrative claim, if filed within the SAA's limitations period, tolls the running of the statute for so long as the claim is pending, in *McMahon v. United States*, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951), and has never answered it.

The Third Circuit has held, in *Northern Metal Co. v. United States*, 350 F.2d 833 (1965), a case governed by the SAA, that the running of the statute of limitations was tolled during the pendency of proceedings before government contracting officers when such proceedings were required by the standard disputes clause in the contract between the parties, even though suit was otherwise untimely under § 745. *Compare generally American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 556–59, 94 S.Ct. 756, 767–69, 38 L.Ed.2d 713 (1974) ("[T]he mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose.").

shipping activity. The solution was the substitution of an *in personam* action against the United States for the *in rem* proceedings the libelant would most often otherwise have had to rely on in admiralty in an action against a private person or property. Hence the restriction in the original Act of the waiver of immunity to claims against "such vessel" and "such cargo." Note 1, *supra*.[8]

Conditioning the waiver of immunity in the SAA on the *res* that is the object of an admiralty claim rather than on the nature of the cause of action that is its subject, however, left a class of maritime claims outside the scope of the SAA. Claims of negligence that did not involve Government vessels or cargo were simply not covered. "[T]hese Acts [the SAA and the PVA, *supra* note 8,] were not generally interpreted to encompass all actionable maritime claims against the United States. Maritime tort claims deemed beyond the reach of both Acts could be brought only on the law side of the district courts under the Federal Tort Claims Act." *United Continental Tuna*, 425 U.S. at 172, 96 S.Ct. at 1324–25.[9]

Were this the extent of the law on the subject, our job would be much easier. The negligence alleged in this complaint gave rise to no cause of action *in rem* against Government vessel or cargo, was not the concern of the drafters of the SAA, and consequently does not preempt the operation of the FTCA under § 2680(d).

In 1960, however, Congress amended the SAA, striking the proviso of the first sen-

tence of § 742 and adding the phrase "or if a private person or property were involved." That section now provides that, "[i]n cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or *if a private person or property were involved*, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . . ." (Emphasis added.) The operative sentence of § 742, despite continued references to "such vessel," "such cargo," and "the vessel or cargo charged with liability," is now open to the inference that the Government argues, namely, that *any* maritime tort is comprehended by the Act, as amended, thus completely preempting the operation of the FTCA in maritime tort actions against the Government. Eleven years later, in *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971), this court accepted the Government's argument, but now, with some guidance from the Supreme Court, we are inclined to the former view.

### III. *The 1960 Amendments to the SAA*

The 1960 amendment to the Suits in Admiralty Act . . . was an outgrowth of severe jurisdictional problems facing the plaintiff with a maritime claim against the United States. Both the Suits in Admiralty Act and the Public Vessels Act authorized suits on the admiralty side of the district courts, and were viewed as providing the exclusive remedy for claims within their coverage. . . .

---

**8.** In 1925 Congress enacted the Public Vessels Act (the "PVA"), 46 U.S.C. §§ 781–790, providing under terms somewhat different from the SAA, whose reach was limited to claims against a vessel "employed as a merchant vessel," for waiver of sovereign immunity and *in personam* liability arising out of claims against "public vessels." More on this Act later in the text.

**9.** Thus in *Moran v. United States*, 102 F.Supp. 275 (D.Conn.1951), for example, in actions for wrongful death and personal injuries arising out of the sinking of a fishing vessel when her nets detonated an aerial bomb allegedly dropped by a military aircraft, the court held that the SAA did not provide a remedy and that

suit was proper under the FTCA. The *Moran* court expressly rejected the argument that the wrongful death actions were barred as untimely under the two year statute of limitations in the Death on the High Seas Act, holding instead that, under the FTCA, suit was timely. *Id.*, 279. And in *Somerset Seafood Co. v. United States*, 95 F.Supp. 298 (D.Md.1951), *rev'd on other grounds*, 193 F.2d 631 (4th Cir. 1951), an action arising out of a collision with the allegedly negligently marked sunken wreck of a former battleship, both the district court and the court of appeals concluded that suit was proper under the FTCA and not maintainable under the SAA. 95 F.Supp. at 305–06; 193 F.2d at 633–35.

A plaintiff with a contract claim against the United States for more than $10,000 often found himself in a difficult position. He had to choose between proceeding in the district court under one of the admiralty Acts, and proceeding in the Court of Claims under the Tucker Act, [28 U.S.C. §§ 1346(a)(2), 1491.] And he had to choose his forum wisely, for cases were not transferrable between the district courts and the Court of Claims, and an incorrect choice could result in the applicable statute of limitations having run by the time the error was discovered. The solution of filing claims in both the district court and the Court of Claims was unavailable, because under 28 U.S.C. § 1500 the Court of Claims has no jurisdiction over any claim that is the subject of a pending suit in any other court. . . .

. . . .

It was the difficulty in determining the appropriate forum for a maritime claim against the United States that moved Congress to amend the Suits in Admiralty Act in 1960. The amendment first passed by the House in 1959 was designed to ameliorate the harsh consequences of misfilings by authorizing the transfer of cases between the district courts and the Court of Claims. The transfer provision would "prevent dismissal of suits which would become time-barred when the appropriate forum had finally been determined." But the Senate Committee on the Judiciary found the House bill inadequate:

> "The transfer bill would operate to prevent ultimate loss of rights of litigants but it did nothing to eliminate or correct the cause of original erroneous choices of forum while it could increase the existing delays."

Accordingly, the committee, while accepting the House amendment, proposed several additional amendments, whose purpose was stated succinctly as follows:

> "The purpose of the amendments is to make as certain as possible that suits brought against the United States for damages caused by vessels and employees of the United States through breach of contract or tort can be originally filed in the correct court so as to proceed to trial promptly on their merits."

Two amendments were designed to clarify the jurisdictional language of the Suits in Admiralty Act. [In the first of these, of concern to us on this appeal,] the committee added language authorizing suits against the United States where a suit would be maintainable "if a private person or property were involved." The prior version of the Act had authorized suits against the United States only when suits would be maintainable if the "vessel" or "cargo" were privately owned, operated, or possessed, and that language had generated considerable confusion.

*United Continental Tuna*, 425 U.S. at 172–73, 175–76, 96 S.Ct. at 1324–26 (footnotes omitted).[10]

It was the drafters' intention that cases which sounded in contract on the one hand, and hence within the jurisdiction of the Court of Claims, and sounded in tort on the other, and hence within the subject matter jurisdiction of the district courts, be first directed to the correct court. Only in this way could transfer from one court to another, with its attendant delay and expense, be avoided altogether. But the scope of an SAA cause of action, as compared to a cause of action for which a district court already had jurisdiction under the FTCA, was no concern of the drafters. Nowhere in the legislative history is there any indication that actions over which the district court already had jurisdiction at law were in any way undesirable from that point of view, to the end that such actions should be maintained, if at all, in admiralty under the SAA. In short, the scope of alternative remedies for claims over which the district

---

**10.** The second amendment, at issue in *United Continental Tuna*, was the deletion of the proviso that the vessel be "employed as a merchant vessel." *Id.*, 425 U.S. at 177, 96 S.Ct. at 1327. See the text, *infra*, at notes 13 and 14.

courts already had exclusive subject matter jurisdiction, under either the FTCA or the SAA, was of no concern to Congress. *See generally* S.Rep.No.1894, 86th Cong., 2nd Sess., *reprinted in* [1960] U.S.Code Cong. & Ad.News 3583 (reprint cited hereafter).

Nevertheless, the overwhelming majority of courts that have considered the question have read a good deal more into the 1960 amendments. In *De Bardeleben Marine Corp. v. United States, supra,* for example, this court had before it an appeal from an apportionment of damages in an action arising out of injuries allegedly sustained as a result of reliance on a faulty navigation chart. The chart was issued by the Government, and the gravamen of the complaint was negligent misrepresentation. There appears to have been no real dispute between the parties that for the plaintiff to state a claim upon which relief could be granted, the action had to be maintained under the SAA. It was apparent that the claim could not have been pressed under the FTCA, for the Supreme Court had long before held, in *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), that the FTCA's exception from waiver of sovereign immunity of any claim "arising out of . . . misrepresentation," 28 U.S.C. § 2680(h), included claims of negligent misrepresentation. 451 F.2d at 142.

What the Government was arguing for on appeal was a holding that FTCA exceptions from waiver of immunity should also apply in actions under the SAA. The Government reasoned that, since that case was brought under the SAA, and since the FTCA expressly precluded suits for negligent misrepresentation under that Act, we should therefore infer an exception from waiver of immunity under the SAA. In effect the Government was asking us to attribute as implied exceptions to waiver of immunity under the SAA all the exceptions expressly provided for under the FTCA. This the court declined to do, but, citing only the Senate Report on the 1960 amendments, *supra,* it accepted the Government's premise that all maritime torts were comprehended by the SAA remedy:

> [T]he legislative history shows that almost on the eve of a probable enactment of a narrowly constructed solution to conflicts in jurisdiction between the Court of Claims and the District Courts, Congress . . . set out to solve the underlying problems by eliminating the historic restriction of SIA–PVA liability to noncontractual claims relating to ships or cargo. It was to assimilate the Government to the private person in relation to any or all transactions giving rise to liability in the Admiralty.

451 F.2d at 145. With but one exception, every court that has since ruled on the issue has agreed that maritime torts against the United States, of whatever kind, must be brought under the SAA or not at all.[11]

---

11. Most courts have held that the SAA applies to non-vessel, non-cargo related maritime torts, completely preempting the FTCA in the maritime setting: *Roberts v. United States, supra* note 7, (9th Cir. 1974); *T. J. Falgout Boats, Inc. v. United States,* 508 F.2d 855 (9th Cir. 1974); *Lane v. United States,* 529 F.2d 175 (4th Cir. 1975); *Bearce v. United States,* 614 F.2d 556 (7th Cir. 1980); *Beeler v. United States,* 224 F.Supp. 973 (W.D.Pa.1964), *rev'd on other grounds,* 338 F.2d 687; *Tebbs v. Baker-Whitely Towing Co.,* 227 F.Supp. 656 (D.Md.1964); *Tankrederiet Gefion A/S v. United States,* 241 F.Supp. 83 (E.D.Mich.1964); *Utzinger v. United States,* 246 F.Supp. 1022 (S.D.Oh.1965); and *Gercey v. United States,* 409 F.Supp. 946 (D.R. I.1976), *aff'd,* 540 F.2d 536, *cert. denied,* 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977). Others have held that the SAA applies without any discussion of conflict with the FTCA: *Richmond Marine Panama, S. A. v. United* States, 350 F.Supp. 1210 (S.D.N.Y.1972); and *Gaspar v. United States,* 460 F.Supp. 656 (D.Mass.1978).

Cf. *Ira S. Bushey & Sons, Inc. v. United States,* 398 F.2d 167 (2nd Cir. 1968) (negligence involving U. S. ship in dry dock held within SAA).

The sole crosscurrent in this confluence of authority is *J. W. Petersen Coal & Oil Co. v. United States,* 323 F.Supp. 1198 (N.D.Ill.1970), in which the court concluded that the Extension of Admiralty Jurisdiction Act, *supra* note 6, did not preempt an action under the FTCA arising out of damage caused to a dock from an allegedly negligent dredging operation.

The Supreme Court has acknowledged, without comment, that most courts have construed the addition of the "private person or property" language to § 742 as requiring "that those maritime tort claims that were previously cognizable only on the law side of the district courts

The *De Bardeleben* court was plainly concerned with keeping the case before it out of the FTCA. If that Act applied to the facts of that case, plaintiffs could not maintain their theory of the case, as a result of which, at least in the area of maritime torts, the Government might be under no practical duty of care respecting the representations made on Government-issued navigation charts. This was a result with which the court was unsympathetic, even though, in holding only that FTCA exceptions were not applicable to suits under the SAA, the court went on to hold that the Government did not breach its duty under the appropriate standard of care. The object was clear: Congressional policy consid-

erations applicable to FTCA actions were not applicable to suits under the SAA, and it was in the latter category that all maritime torts against the United States fell.[12]

It was a similarly broad reading of the purpose and effect of the 1960 amendments to the SAA which later drew the attention of the Supreme Court. In *United Continental Tuna Corp. v. United States*, 499 F.2d 774 (9th Cir. 1974), the Ninth Circuit held that the 1960 amendments to the SAA brought all maritime torts within the expanded scope of that Act, including claims against "public vessels," the subject matter of the PVA, which Congress had neither amended nor repealed by the 1960 amendments.[13] On certiorari the Supreme Court

under the Federal Tort Claims Act now be brought on the admiralty side of the district courts under the Suits in Admiralty Act." *United Continental Tuna*, 425 U.S. at 176, 96 S.Ct. at 1326–27, n. 14.

**12.** The promise in *De Bardeleben* that comprehensive coverage of maritime torts by the SAA, itself a comprehensive waiver of sovereign immunity, would result in no FTCA-strings attached, 451 F.2d at 145–46, has been unfulfilled. Since *De Bardeleben*, this court, as have others, has shown little reluctance to limit SAA causes of action along the lines of a suit under the FTCA. Thus, for example, in *Beaucoudray v. United States*, 490 F.2d 86 (5th Cir. 1974), this court held that survivors of a Coast Guardsman who died while in active service did not have a cause of action under the SAA. The Supreme Court had long before held, in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), that servicemen killed or injured while on duty had no cause of action under the FTCA, even though that Act in terms excepted from waiver of immunity only claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, *during time of war*." 28 U.S.C. § 2680(j) (emphasis added). The *Beaucoudray* court so construed the scope of such an action under the SAA. And *Gercy v. United States, supra* note 11, 540 F.2d at 538–39, read a "discretionary functions" exception from waiver of immunity, expressly provided for in the FTCA, 28 U.S.C. § 2680(a), into the SAA, even though that Act makes no distinction between "discretionary" and "non-discretionary" negligence resulting in death or injury. To the same effect was the holding of the Seventh Circuit in *Bearce v. United States, supra* note 11.

**13.** In *United Continental Tuna, supra*, the Ninth Circuit did not rely on its holding of less than a month earlier, in *Roberts v. United*

*States, supra* note 7, that all maritime torts had to be brought against the Government under either the SAA or the PVA. *Roberts* involved a maritime tort alleging negligence in aviation navigation, and did not involve either Government vessel or cargo. Judge Trask authored both decisions, however. The decision in *Roberts* might therefore be supposed to stand on the insertion of the "private person or property" phrase to § 742 while *United Continental Tuna* turned on the deletion of the "merchant vessel" proviso, but there is no express indication to that effect in either opinion.

In any event, the Ninth Circuit held in *United Continental Tuna* that the deletion of the "merchant vessel" proviso, or the insertion of the "private person or property" phrase, or more likely both (it is not clear which), eliminated the distinction theretofore drawn by the SAA and the PVA between claims against "merchant vessels" on the one hand and "public vessels" on the other, as a consequence of which the provisions of the PVA no longer applied to a libel arising out of the alleged negligence of a naval destroyer, clearly a "public vessel" under the PVA. The particular provision of the PVA that the court of appeals had in mind was § 5, 46 U.S.C. § 785, which denies suit under the PVA by a foreign national whose government does not allow suit in its courts by United States nationals under similar circumstances. There is no comparable provision in the SAA. *United Continental Tuna* was a Philippine corporation, although 99% of its stock was in the hands of American investors. Finding no reciprocity on the part of the Philippine government, the district court had granted the United States' motion for summary judgment.

The court of appeals was obviously concerned that, if suit were confined to the PVA alone, the American owners would be denied their day in an American court, the only forum that could afford them relief. Instead, the

reversed. The Court rejected the contention that it was any part of Congress' intent to expand the scope of one remedy, the SAA, at the expense of another, the PVA, when both remedies were within the exclusive jurisdiction of the district courts. Congress' sole concern was the conflict in jurisdiction between the district court and the Court of Claims in that category of cases that might fall within the scope of the admiralty acts, either the SAA or the PVA, on the one hand, or the Tucker Act, on the other. The solution was to expand the jurisdiction of the district court under the SAA: "[Congress] attempted to eliminate the confusion between these two categories by expanding the scope of the Suits in Admiralty Act at the expense of the Tucker Act—thereby virtually eliminating the quasi-admiralty jurisdiction of the Court of the Claims under the Tucker Act." *Id.*, 425 U.S. at 179, 96 S.Ct. at 1328.

IV. *Beyond United Continental Tuna*

■ Although the Supreme Court purported to confine its analysis to the amendment to § 742 deleting the "merchant vessel" proviso, *id.*, 425 U.S. at 176–77, 96 S.Ct. at 1326–27, we think its analysis extends equally to the amendment adding the reference to "private person or property." In *United Continental Tuna* the Supreme Court decided that a distinct admiralty remedy survived the enhancement of the SAA. In this case we must decide whether a distinct remedy at law retains any continuing vitality in the area of maritime torts. In a paraphrase of the Court's conclusion in *United Continental Tuna*, we must decide whether Congress expanded the scope of the SAA at the expense of the FTCA as well as the Tucker Act. We conclude that it did not.

Two problems derived from prior decisions confronted the 1960 drafters: First

was the limitation of the § 742 remedy to cases where Government "cargo" was involved. Second was the limitation of the remedy to cases involving vessels "employed as a merchant vessel." In both instances the statutory language had "produced uncertainty and obscurity." S.Rep. No.1894, at 3586. Concerning the second of these problems, the requirement that the vessel be "employed as a merchant vessel," earlier cases had reached inconsistent results as to when a vessel was so engaged. *Id.*, and cases cited therein. This problem was aggravated by the fact that differences in the authorizing language of the SAA and PVA suggested that most contract claims against public vessels could be maintained only in the Court of Claims. If the vessel was a merchant vessel, suit was proper in the district court under the SAA (and in the Court of Claims as well, under the Tucker Act, if the suit was for less than $10,000); if the vessel was a public vessel, suit might be proper *only* in the Court of Claims. *Id.*, at 3584–85; *United Continental Tuna*, 425 U.S. at 177–78, 180–81, 96 S.Ct. at 1327–28.[14] "Congress' deletion of the 'employed as a merchant vessel' proviso was clearly intended to remove such uncertainty as to the proper forum by bringing within the Suits in Admiralty Act whatever category of claims involving public vessels was beyond the scope of the Public Vessels Act." *Id.*, 425 U.S. at 180–81, 96 S.Ct. at 1328.

The problem with the language limiting the § 742 remedy to cases involving government "cargo" was more basic.

In *Ryan Stevedoring Co. v. United States* (175 F.2d 490 [2 Cir.]), it was held that, during the interval it was being trucked across the pier from a lighter to a Government vessel's tackle, cargo was only merchandise or property and not

court held that the amended SAA encompassed "all maritime claims against the United States, regardless of the type of vessel involved." 499 F.2d at 777. The court of appeals acknowledged that this construction had the practical effect of construing the repeal of the PVA, particularly that Act's reciprocity provision, "in a manner neither explicitly authorized nor perhaps contemplated by Congress," *id.*, at 778,

but it expressed some hope that some of the other minor differences in the SAA might mitigate this effect.

14. The Supreme Court has left open the question of whether such contract claims "were necessarily beyond the scope of the [PVA]." 425 U.S. at 181, 96 S.Ct. at 1328–29, n. 21.

"cargo" within the statutory language so that the United States could not be sued under the Admiralty Claims Act.

S.Rep.No.1894, at 3586. The amendment to § 742 adding the language "or if a private person or property were involved" to the scope of the SAA remedy was intended to eliminate such distinctions: "The inclusion of the word 'property' in the amendment to the bill will make it clear that suits against the Government in respect of such cargo may be brought in admiralty, and will avoid technical distinctions of whether 'merchandise' or 'cargo' is involved." Id.[15]

That this was the purpose of the 1960 amendments, to clarify what was meant by "vessel" or "cargo" that would subject the Government to suit under the SAA but not to bring all maritime claims within the Act, is made clear by J. W. Petersen Coal & Oil Co., supra note 11:

The words "or if a private person or property were involved" were added not to bring all maritime torts by the Government into the statute's range but more likely merely to . . . avoid the technical distinction of when goods owned by the Government to be carried on a vessel have ceased to be "merchandise" and have become "cargo" which was the point of decision in Ryan Stevedoring Co. . . . .

323 F.Supp. at 1204.[16]

There are, in addition, passages in the legislative history of the amendments that cast considerable doubt on the conclusion that all maritime torts were intended to be confined to the admiralty side of the district courts, under either the SAA or PVA.

In the first place, those recommending the changes to § 742 referred to the district court's jurisdiction under the FTCA as a part of that forum's jurisdictional basis which admiralty lawyers sometimes confused with the jurisdiction available in the Court of Claims. S.Rep.No.1894, at 3589. The Department of Commerce, which sponsored the amendments to § 742, nowhere suggests, beyond the suggestion inherent in the recommended statutory language addressing the jurisdictional conflict between the Court of Claims and the district court, that the latter court's jurisdiction under the FTCA was to be in any way diminished. Id., at 3589–90.

Moreover, in summarizing the purpose of the amendments to § 742, the Senate Judiciary Committee reported that they restate "in brief and simple language the now existing exclusive jurisdiction conferred on the district courts, both on their admiralty and law sides, over cases against the United States which could be sued on in admiralty if private vessels, persons, or property were involved." Id., at 3583 (emphasis added). If this does not confirm the district court's continuing jurisdiction under the FTCA, over maritime torts that remain outside the scope of the amended § 742, it is hard to tell what the Senate Committee meant by reporting that the district courts would continue to have jurisdiction, on their law side, in cases against the United States which could be brought in admiralty if a private person were involved. The only other possible construction of the Report's phrase is as a reference to the district court's concurrent jurisdiction, with the Court of Claims,

---

15. This is the only explicit reference in the Senate Report to the purpose of the added phrase "or if a private person or property were involved."

16. The Petersen court found other purposes, explaining the addition of the phrase "if a private person . . . were involved":

The words "or if a private person or property were involved" were added not to bring all maritime torts by the Government into the statute's range but more likely merely to: (1) [avoid the Ryan Stevedoring distinction]; (2) confirm that the Act was not limited to cases where prior to it the Government vessel could have been seized in rem but went far-

ther and gave a remedy in personam against the United States both in cases where only the vessel would be liable and in those cases where the owner of the vessel, if privately owned, would be personally liable. See Pennsylvania Railroad Company v. United States, 245 F.2d 321 (2nd Cir. 1957); and (3) lay to rest the notion that the Government's ownership of cargo must be directly connected with the Government's ownership and operation of a vessel. See Prudential Steamship Corporation v. United States, [220 F.2d 655 (2nd Cir. 1955)].
323 F.Supp. at 1204.

over maritime contract claims under the Tucker Act. But these are precisely the sort of claims that the amendments were designed to get out of the Court of Claims and into the district court, in admiralty, by way of the SAA. *United Continental Tuna,* 425 U.S. at 180–81, 96 S.Ct. at 1328.[17] And it is impossible to tell how or why the district courts should continue to have a Tucker Act basis for jurisdiction at law over maritime contract claims while maritime tort claims are all to be confined to admiralty under the SAA. Both types of maritime claims, contract and tort, are within the construction of the SAA argued for by the Government. In either type of case the SAA would apply and would require a proceeding in *admiralty* against the Government if, had "a private person or property" been involved, such a proceeding was available against the hypothetical defendant. The Senate Committee must have been aware of this when it reported that district courts would continue to have jurisdiction at law for claims against the Government that could be brought in admiralty if a private person or property were involved. It could only have referred to a proposition that all acknowledged at the time but which no one sought to change: that there are a class of maritime torts, not involving Government vessels, cargo, or shipping activity generally, that are outside the scope of the SAA and therefore within the scope of the FTCA.

## V. *Conclusion*

■ The problem is whether the addition of the phrase "or if a private person or property were involved" to § 742 had the effect of bringing all maritime torts within the scope of the SAA. In the context of this case, the question is whether the Government agents who allegedly negli-

gently placed the obstruction in Mr. McCormick's way were "persons," or whether the obstruction itself was "property," within the meaning of the remedy provided in the SAA. We conclude that they are not. The same legislative history relied on by the Supreme Court indicates no purpose to expand the scope of the SAA at the expense of the FTCA, when both cases were clearly within the exclusive jurisdiction of the district courts. "[C]laims like the instant one, that fell within the [FTCA], presented none of the problems with which Congress was concerned in 1960, and there is therefore no reason to infer that Congress intended to affect them." *Id.,* 425 U.S. at 181, 96 S.Ct. at 1329. We are confident that if the *De Bardeleben* court had had the benefit of the Supreme Court's exposition in *United Continental Tuna* it would have arrived at another result, similar in its premises to the result we reach today.[18]

For reasons apart from the mere absence of contrary Congressional intent, we think the revival of the FTCA in the area of maritime torts, insofar as the SAA permits, is salutary. Least among these, perhaps, are problems of making the four corners of the 1920 statute fit situations for which it was not intended.[19] More importantly, cases which give every appearance of an ordinary tort should not, for their maritime character alone, be relegated to the more obscure shipping acts. When one's dealings with the Government are with the Government as a member of the shipping industry, we can more confidently expect reliance on the appropriate remedial provisions. To the contrary here, as the facts of this case illustrate, where plaintiffs' sole dealings with the Government are with the Government as tortfeasor. People would naturally turn to the FTCA for relief, as plaintiffs

---

**17.** See the text at note 14, *supra.*

**18.** We see no reason to retreat from the thrust of the *De Bardeleben* holding, to the effect that, if a proceeding *is* governed by the SAA, FTCA exceptions and defenses not explicitly provided for in the SAA are not to be lightly inferred. *But see* note 12, *supra.*

**19.** How, for instance, does one square § 742's continued reference to "such vessel," "such cargo," and "the vessel or cargo charged with liability" with the inclusion of "or if a private person or property were involved"? If it had actually been Congress' intention to bring the whole world of maritime torts within the reach of the SAA, it would not have been too much to expect some correction of these incongruous references.

have in this case, and our examination reveals that Congress has done nothing to indicate that that reliance is misplaced. Finally, and most importantly, by retaining some room for the FTCA in the maritime context, we give effect to policy considerations Congress specifically addressed in considering the Government's exposure as tortfeasor, considerations such as *De Bardeleben* and, in another context, the lower court in *United Continental Tuna* were at pains to avoid. It need hardly be added that a comprehensive treatment of the Government's role as tortfeasor was not the point of the SAA, although that was a large part of the problem of Government shipping in the commercial maritime setting; instead, Congress was concerned with the Government's role as a member of the shipping industry. We restore that understanding.

REVERSED and REMANDED for proceedings consistent with this opinion.