**James E. McCORMICK and Carol Ann McCormick, etc., et al., Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 79–2144.**

United States Court of Appeals, Fifth Circuit.*

June 25, 1982.

Rehearings Denied Sept. 28, 1982.

Clayton J. M. Adkinson, DeFuniak Springs, Fla., for plaintiffs-appellants.

Nicholas P. Geeker, U. S. Atty., Pensacola, Fla., Stephen Leach, Trial Atty., Debra J. Kossow, Torts Branch, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

(Opinion May 18, 1981, 645 F.2d 299 (5th Cir. 1981))

(June 25, 1982)

Before THORNBERRY, ANDERSON, and THOMAS A. CLARK, Circuit Judges.

* Former Fifth Circuit case, Section 9(3) of Public Law 96–452—October 14, 1980.

THOMAS A. CLARK, Circuit Judge:

We GRANT the appellee's petition for rehearing and VACATE our prior panel opinion, *McCormick v. United States*, 645 F.2d 299 (5th Cir. 1981). No member of this panel nor judge of this administrative unit in regular active service having requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16; Fifth Circuit Judicial Council Resolution of January 14, 1981), the suggestion for Rehearing En Banc is DENIED.

In our original panel opinion we held that the 1960 Amendments to the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, did not bring the appellants' maritime tort claims against the United States within the scope of the SAA, and that therefore the appellants could maintain suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. Thus, we reversed the district court's dismissal of appellants' action for failure to file the complaint within the two-year statute of limitations contained in the SAA. Upon reflection, we have concluded that our prior holding was in error, but that the district court nevertheless should be reversed for other reasons. Therefore, we vacate our original opinion in this case, reported at 645 F.2d 299, and substitute the following opinion in its place:

This is an appeal from a district court order dismissing the appellants' complaint for lack of subject matter jurisdiction. The facts of the case are simple and undisputed for purposes of this appeal. Early on the morning of August 22, 1976, James E. McCormick and a friend were traversing the waters of the Choctawhatchee Bay in Florida near the United States Army's Fort Rucker Recreational Area, which is located on the north shore of the Bay. McCormick and his friend were in a small pleasure boat owned and operated by McCormick. At approximately 4:30 a. m., the boat struck an unmarked piling near the outer end of a pier extending from the recreational area into the Bay. Appellants assert that the piling was "unlawfully placed and improperly constructed by the United States Army so as to impede and create a hazard for those navigating the waters of the Choctawhatchee Bay." Record at 3–4.

Appellants submitted claims for damages to the Department of the Army on January 25, 1978, and on July 21, 1978.[1] Appellants apparently followed this course of action because they believed that their claims were governed by the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, which requires submission of a claim for damages to the appropriate administrative agency as a precondition to filing suit in court.[2] 28 U.S.C. § 2675(a). The Department of the Army denied appellants' claims on September 22, 1978, on the ground that administrative authority to settle the claims had expired on August 22, 1978, the second anniversary of the accident.[3]

The appellants thereafter filed a complaint in the United States District Court

1. Appellant James McCormick filed his claim in January. He amended his claim in July, at which time his wife, Carol McCormick, submitted her claim. Claims in behalf of the McCormicks' three minor children were also submitted in July.

2. Title 28 U.S.C. § 2675(a) in pertinent part provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

3. The Secretary of the Army is authorized by statute to "settle or compromise an admiralty claim against the United States for . . . damage caused by a maritime tort committed by an agent or employee of the Department of the Army or by property under the jurisdiction of the Department of the Army." 10 U.S.C. § 4802(a)(3).

for the Northern District of Florida on November 6, 1978. The complaint alleged jurisdiction under the Federal Tort Claims Act. In its answer, the government denied that the action arose under the FTCA, and alleged that jurisdiction could lie, if at all, only under the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 741–752. The government then filed a motion to dismiss the action for lack of subject matter jurisdiction because the complaint was not filed within the two-year limitation period prescribed by the SAA. 46 U.S.C. § 745. The district court granted the motion and dismissed the action. The plaintiffs then timely filed a notice of appeal.

Three issues are presented in this case. First, the appellants contend that the district court erred by finding that this case falls within the admiralty jurisdiction. Second, the appellants assert that, even if this is an admiralty case, the appropriate statute under which this action arises is the Federal Tort Claims Act rather than the Suits in Admiralty Act. Finally, the appellants contend that, if this case arises under the Suits in Admiralty Act, the district court erred by finding that the two-year statute of limitations in the SAA was not tolled during the time that appellants' claims were pending before the Department of the Army. For the reasons that follow, we hold that this case falls within the admiralty jurisdiction and is actionable exclusively under the SAA, but that the district court incorrectly held that the SAA's limitations provision cannot be tolled.

ADMIRALTY JURISDICTION

The appellants' first contention is that the district court erred by holding that this case falls within admiralty jurisdiction. A tort claim is maritime in nature and thus within the admiralty jurisdiction of the federal courts when the alleged wrong (1) occurs on navigable waters and (2) bears a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). The appellants assert that neither of these two requirements are satisfied in this case.

First, appellants argue that the collision between McCormick's boat and the piling did not occur on navigable waters. Although appellants concede that the Gulf Intracoastal Waterway (GIW) runs through the Choctawhatchee Bay and that the GIW is navigable, they claim that the collision occurred outside the GIW in a portion of the Bay that is close to shore and not navigable. It has long been established, however, that the jurisdiction of the admiralty courts over navigable waters extends from shoreline to shoreline. *See, e.g., United States v. Ray*, 423 F.2d 16, 19 n.4 (5th Cir. 1970) ("The fact that a portion of a body of water is nonnavigable does not affect the legal character of general navigability of the area."); *United States v. Turner*, 175 F.2d 644, 667 (5th Cir.), *cert. denied*, 338 U.S. 851, 70 S.Ct. 92, 94 L.Ed. 521 (1949) (no distinction permitted between shallows and depths of navigable waters); 2 *Am.Jur.2d, Admiralty* § 22. Moreover, appellants' argument springs a serious leak in view of the fact that McCormick was actually navigating the waters of the Bay when the collision occurred. Therefore, we must reject this contention and hold that the collision occurred on navigable waters.

Appellants also contend that the actions involved here do not bear a significant relationship to traditional maritime activity. We must reject this position as well. In *Kelly v. Smith*, 485 F.2d 520 (5th Cir. 1973), *cert. denied sub nom. Chicot Land Co. v. Kelly*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974), this court articulated several factors to be considered in determining whether the required maritime nexus exists: "the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law." *Id.* at 525. Applying these factors, the *Kelly* court found a maritime nexus to exist for several reasons: (1) because the vehicle involved was a boat, the function of which is "transportation across navigable waters, a traditional role of watercraft"; (2) because the injured party was the pilot, "the person

responsible for the safe navigation of the river"; and (3) because one traditional role of admiralty has been to furnish remedies for those injured while traveling on navigable waters. *Id.* at 525–26. All three reasons supporting the finding of a maritime nexus in *Kelly* are equally applicable in this case. Therefore, because the accident involved here occurred on navigable waters and the required maritime nexus is present, we hold that the district court was correct in its conclusion that this case falls within the admiralty jurisdiction.[4]

SAA or FTCA?

■ Appellants contend that this case is actionable under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. Section 2680(d) of the FTCA provides, however, that the FTCA "shall not apply to . . . [a]ny claim for which a remedy is provided by [the Suits in Admiralty Act (SAA), 46 U.S.C. §§ 741–752]." Therefore, appellants' assertion of jurisdiction under the FTCA is correct only if their claims do not fall within the coverage of the SAA.

Analysis of this issue is clarified by a brief review of the history of the SAA and a related statute, the Public Vessels Act, 46 U.S.C. §§ 781–790.

> Prior to 1916, the doctrine of sovereign immunity barred any suit by a private owner whose vessel was damaged by a vessel owned or operated by the United States. Recognizing the inequities of denying recovery to private owners and the difficulties inherent in attempting to grant relief to deserving private owners through private Acts of Congress, Congress provided in the Shipping Act, 1916, that Shipping Board vessels employed as merchant vessels were subject to "all laws, regulations, and liabilities governing merchant vessels." 39 Stat. 730, 46 U.S.C. § 808. In *The Lake Monroe*, 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962 (1919), [the Supreme] Court held that the Shipping Act had subjected all Shipping Board merchant vessels to proceedings *in rem* in admiralty, including arrest and seizure. Congress, concerned that the arrest and seizure of Shipping Board merchant vessels would occasion unnecessary delay and expense, promptly responded to the *Lake Monroe* decision by enacting the Suits in Admiralty Act. The Act prohibited the arrest or seizure of any vessel owned by, possessed by, or operated by or for the United States. 46 U.S.C. § 741. In the place of an *in rem* proceeding, the Act authorized a libel *in personam* in cases involving such vessels, if such a proceeding could have been maintained had the vessel been a private vessel, and "provided that such vessel is employed as a merchant vessel." 41 Stat. 525, 46 U.S.C. § 742 (1958 ed.). . . .
>
> Until 1925 the only recourse for the owner of a vessel or cargo damaged by a public vessel was to apply to Congress for a private bill. In that year, Congress enacted the Public Vessels Act, which authorized a libel *in personam* against the United States "for damages caused by a public vessel of the United States." 46 U.S.C. § 781.

*United States v. United Continental Tuna Corp.*, 425 U.S. 164, 170–71, 96 S.Ct. 1319, 1323–24, 47 L.Ed.2d 653 (1976).

As originally enacted, the SAA and PVA, which authorized suit on the admiralty side of the district courts, did not "encompass all actionable maritime claims against the United States. Maritime tort claims deemed beyond the reach of both Acts could

4. As this panel stated in *Richardson v. Foremost Insurance Co.*, 641 F.2d 314 (5th Cir. 1981), *cert. granted*, 454 U.S. 813, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981) (argued 1982), which we heard during the same week that the present case was heard, "[w]e sympathize with those writers and scholars who strongly believe that admiralty jurisdiction should be limited to only litigation involving commercial activity on navigable waters." *Id.* at 316. We conclude, however, that the facts in *Richardson* were more closely related to traditional maritime activities than were the facts in *Kelly, supra*, thus compelling the conclusion that the required maritime nexus was present. We still question whether admiralty jurisdiction *should* extend to cases, such as the present case, where no commercial maritime activity is involved. As in *Richardson*, however, we believe that existing precedent requires a finding that this case falls within the admiralty jurisdiction.

be brought only on the law side of the district courts under the Federal Tort Claims Act." *Id.* at 172, 96 S.Ct. at 1324–25. Thus, had the SAA remained unchanged, the appellants would be correct in their assertion that their claims arise under the FTCA,[5] for the original SAA extended only to claims involving government merchant vessels or cargo,[6] neither of which is involved in this case.

In 1960, however, Congress amended section 2 of the SAA, which now provides that the SAA applies not only in cases where government vessels and cargo are involved, but also "[i]n cases where ... if a private person or property were involved, a proceeding in admiralty could be maintained ...."[7] 46 U.S.C. § 742. Every circuit to address the effect of this amendment, including our own, has held that the language "if a private person or property were involved" extended the coverage of the SAA to include all maritime tort claims against the United States where the plaintiff would have an action in admiralty were the defendant a private person rather than the government. *See Bearce v. United States*, 614 F.2d 556 (7th Cir.), *cert. denied*, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980); *Kelly v. United States*, 531 F.2d 1144 (2d Cir. 1976); *Roberts v. United States*, 498 F.2d 520 (9th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *DeBardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir. 1971).

Turning to the case before us, if the appellants were alleging injury resulting from the negligence of a private defendant rather than the government, a proceeding in admiralty could be maintained. Therefore, appellants' claims are actionable under the SAA. Thus, the district court was correct to conclude that this action may not be brought under the FTCA, which by its express terms does not cover claims for which a remedy is provided by the SAA.

Had the appellants merely alleged the wrong statute but otherwise had alleged facts sufficient to state a timely claim under the SAA, the district court could have simply transferred the case to the admiralty side. *See Beeler v. United States*, 338 F.2d 687 (3d Cir. 1964). Here, however, the two-year limitations period of the SAA already had expired when the complaint was filed, thus ruling out a transfer to the admiralty side unless the limitations period was tolled for some reason. This brings us to the appellants' final contention that the district court erred by finding that the limitations period was not tolled in this case.

TOLLING

The district court held, and the government on appeal urges, that the two-year limitations period in the SAA is jurisdictional in nature and not subject to waiv-

5. There is no question that prior to the 1960 amendments to the SAA, claims such as those involved here would have been actionable under the FTCA. For example, *Moran v. United States*, 102 F.Supp. 275 (D.Conn.1951), involved actions for wrongful death and personal injuries arising out of the sinking of a fishing vessel when her nets detonated an aerial bomb allegedly dropped by a military aircraft. The court held that the SAA did not provide a remedy and that suit was proper under the FTCA. Also, in *Somerset Seafood Co. v. United States*, 95 F.Supp. 298 (D.Md.1951), *rev'd on other grounds*, 193 F.2d 631 (4th Cir. 1951), an action arising from a collision with the allegedly negligently marked sunken wreck of a former battleship, both the district court, 95 F.Supp. at 305–06, and the court of appeals, 193 F.2d at 633–35, concluded that suit was not maintainable under the SAA and thus proper under the FTCA.

6. Before 1960, § 742 read as follows:

> In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States ... provided that such vessel is employed as a merchant vessel ....

41 Stat. 525, 46 U.S.C. § 742 (1958 ed.).

7. The amended § 742 provides in pertinent part as follows:

> In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States ....

er or tolling. Although some courts have held that the SAA limitations provision cannot be tolled or waived, *see Szyka v. U. S. Secretary of Defense*, 525 F.2d 62 (2d Cir. 1975); *T. J. Falgout Boats, Inc. v. United States*, 508 F.2d 855 (9th Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975), other courts have held that the provision is tollable under certain circumstances, *see Northern Metal Co. v. United States*, 350 F.2d 833 (3d Cir. 1965); *Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947). Neither the United States Supreme Court nor the Fifth Circuit has addressed the question whether the two-year limitation period of the SAA can be tolled. We thus are faced with a question of first impression in this circuit.

The government argues that the SAA limitations provision cannot be tolled because it is a "substantive" statute of limitations, and thus limits the existence of a claimant's right against the United States as well as his remedy. Even if this two-year limitation is properly characterized as "substantive" rather than "procedural," however, this fact alone does not preclude tolling of the statute. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court discussed this "substantive-procedural" distinction and its effect on the tollability of a statute of limitations:

> "[W]hile the embodiment of a limitation provision in the statute creating the right which it modifies might conceivably indicate a legislative intent that the right and limitation be applied together . . ., the fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled." . . . *The proper test is not whether a time limitation is "substantive" or "procedural," but whether tolling the limitation in a given context is consonant with the legislative scheme.*
>
> . . . . .
>
> [I]n cases where the plaintiff has refrained from commencing suit during the period of limitation because of inducement by the defendant, *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770, or because of fraudulent concealment, *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, this Court has not hesitated to find the statutory period tolled or suspended by the conduct of the defendant. In *Glus, supra*, the Court specifically rejected a contention by the defendant that when "the time limitation is an integral part of a new cause of action . . . that cause is irretrievably lost at the end of the statutory period." 359 U.S., at 232, 79 S.Ct., at 761. To the contrary, the Court found that the strict command of the limitation period provided in the federal statute was to be suspended by considerations "[d]eeply rooted in our jurisprudence." *Ibid.*
>
> These cases fully support the conclusion that the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose.

414 U.S. at 557–59, 94 S.Ct. at 768–69 (emphasis supplied) (citations and footnotes omitted). This language clearly demonstrates that a determination whether a limitations provision can be tolled is not to be based on a finding that the limitation is "substantive" or "procedural," but rather on whether tolling the limitation period would be inconsistent with the legislative purpose behind the limitations provision.

The government apparently takes the position that the SAA limitations provision is intended to serve a different purpose than a typical statute of limitations. The argument appears to be that, because the SAA represents a waiver of the sovereign immunity of the United States, the two-year limitation period is intended to be an absolute limitation on the duration of that waiver. Even though the SAA waives the sovereign immunity of the United States, however, this fact alone does not compel the

conclusion that the two-year limitations period cannot be tolled under any circumstances. In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), a case involving the limitations period of the FTCA, while like the SAA waives the sovereign immunity of the United States, the Supreme Court stated that:

> Statutes of limitation, which "are found and approved in all systems of enlightened jurisprudence," ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free from stale claims in time comes to prevail over the right to prosecute them." ... These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise....
>
> Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims....
>
> We should also have in mind that the Act waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.... Neither, however, should we assume the authority to narrow the waiver that Congress intended.

*Id.* at 117–18, 100 S.Ct. at 357 (citations omitted). This language suggests that limitations provisions in statutes waiving sovereign immunity are designed to serve the same purposes as are ordinary statutes of limitation, the primary purpose being to encourage the prompt presentation of claims. We cannot accept the government's position, and the district court's holding, that the SAA limitations provision can never be tolled. We hold that the two-year limitation on suits under the SAA can be tolled under appropriate circumstances where to do so would not defeat the purpose of the provision, which is to encourage those with claims against the United States to present their claims promptly and diligently, and where injustice to the plaintiff would otherwise result.

Having concluded that the limitation period can be tolled, we are left with the question whether it was tolled in this case. After reviewing the record in this case, we conclude that we do not have before us enough facts to resolve this issue. We therefore must remand this case to the district court, which is to take evidence and make findings of fact on the tolling issue and then determine whether the circumstances of this case justify a conclusion that the limitations period was tolled.

For the reasons expressed in this opinion, we reverse the district court's holding that the SAA limitations period is not subject to tolling and remand for further fact-finding on the tolling issue.

REVERSED and REMANDED.

THORNBERRY, Circuit Judge, specially concurring:

I agree fully with Judge Clark that this case is an admiralty action under the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.* (1975). I also agree with him that the case should be remanded for a determination of whether or not to toll the SAA's limitations period. But I do not think that the analysis has yet been taken far enough to show that the limitations period can actually be tolled; therefore, I would remand to allow the presentation of additional evidence and argument regarding our ability to toll the limitations period.

As Judge Clark quite correctly observes, the question whether or not a limitations period can be tolled depends upon the meaning of the statute which contains it.

No longer can a sophisticated legal system decide this question simply by incanting the charmed labels of "substance" or "procedure." "The proper test is not whether a time limitation is 'substantive' or 'procedural,' but whether tolling the limitation in a given context is consonant with the legislative scheme." *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 557–58, 94 S.Ct. 756, 768, 38 L.Ed.2d 713 (1974). Even when the limitations period conditions a waiver of the United States' sovereign immunity, as does the SAA, "we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick,* 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) (citations omitted). We should, in other words, analyze a limitations period according to Congress' will, not according to the courts' magical formulae.

The problem is that no one has fully examined Congress' intent in the limitations period written for the SAA. None of the parties here presented any evidence of statutory purpose to this Court either in brief or in oral argument; apparently, no such argument was made to the court below. The two Circuits that have found the SAA limitations period to be jurisdictional, and thus incapable of being tolled, have done little more than state conclusions, without undertaking the legislative analysis that I believe *Kubrick* mandates. *See Szyka v. United States Secretary of Defense,* 525 F.2d 62 (2d Cir. 1975); *T. J. Falgout Boats, Inc. v. United States,* 508 F.2d 855 (9th Cir. 1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975).[1] The Third Circuit, which allowed the SAA limitations period to be tolled, accurately investigated the policy considerations relevant to statutes of limitations, but did not examine congressional intent in a manner completely applicable to this case. *See Northern Metal Co. v. United States,* 350 F.2d 833 (3d Cir. 1965). Because of this paucity of information available to us, I would remand primarily for the purpose of finding what Congress meant in the SAA limitations period. Only after this full analysis would I require the district court to study the equities and facts of this case.

1. Of course, it is possible that the parties and the Second and Ninth Circuits have discovered what is often the case in legislative history analyses—the fact that no legislative history or congressional policy can be found to answer the particular question. Indeed, my own cursory examination has revealed no evidence relating to the SAA statute of limitations. If no such evidence exists, then I might have to object to Judge Clark's decision to allow tolling of the limitations period. In my opinion, and as indicated by the rule construing waivers of sovereign immunity in favor of the sovereign, we probably ought to assume that if Congress had intended to broaden the waiver by allowing tolling, it would have said so.